UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEBORAH A. MCEVOY,            )
                                 )
     Plaintiff,              )
                                 )
     v.                    )         CAUSE NO. 3:08-CV-381 CAN
                                 )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security,   )
                                 )
     Defendant.           )

**OPINION AND ORDER**

On November 17, 2008, Plaintiff, Deborah A. McEvoy ("McEvoy"), filed her complaint

in this Court. On April 20, 2009, McEvoy filed an opening brief asking this court to remand this

matter to the Commissioner pursuant to 42 U.S.C. § 405(g). On July 6, 2009, Defendant,

Michael J. Astrue, Commissioner of Social Security ("Commissioner"), filed its response. On

August 10, 2009, McEvoy filed her reply brief. This Court now enters the following opinion and

order based upon the pleadings, filings, administrative record and briefs of the parties.

I.     **PROCEDURE**

On July 3, 2003 McEvoy filed an application for Social Security Insurance ("SSI").

This application was denied initially on October 28, 2003 and upon reconsideration on

December 29, 2003. McEvoy then filed a second application for SSI on November 18, 2004,

which was initially denied on February 14, 2005 and upon reconsideration on April 25, 2005.

Plaintiff then filed a timely request for hearing and a hearing was held on May 21, 2005 before

Administrative Law Judge Frederick McGrath ("ALJ").

On November 7, 2007, the ALJ denied McEvoy application and found her not disabled.

Considering McEvoy's age, education, past work experience, and residual functioning capacity ("RFC"), and relying on testimony of the vocational expert ("VE"), the ALJ found McEvoy was capable of performing her past work as a counter clerk/sales clerk. On November 28, 2007, McEvoy filed a timely request for review with the Social Security Appeals Council. McEvoy's request was denied, making the ALJ's decision the final decision of the Commissioner. See also C.F.R. § 404.981. On November 17, 2008, McEvoy filed an appeal of that decision in this Court. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C § 636(c), and 42 U.S.C.§ 405(g).

## II.    ANALYSIS

### A.    Facts

McEvoy was born on July 5, 1949 and was almost 58 years old at the time of the hearing decision. McEvoy has completed the eleventh grade of and has a prior work history as a sales manager/clerk for a laundry store.

In January 2003, McEvoy was admitted to the hospital for alcoholic liver disease, hepatitis, dehydration, hypertension, hypokalemia, anemia and a peptic ulcer disease; she was treated and released and advised to follow up with her primary care physician.

On March 27, 2003, Mohammad Jamil, M.D. completed a medical statement ("MSS") indicating that McEvoy has cirrhosis, jaundice, hepatic encephalopathy, portal hypotension and muscle wasting, and has mild mental impairments with activities associated with daily living and moderate limitations in social functioning. Additionally, on March 27, 2003 McEvoy was seen by Dr. Jamil. At that time Dr. Jamil noted that McEvoy indicated she felt weak but overall was feeling better and that McEvoy was clinically stable. In July 2003, Dr. Jamil executed a letter

which indicated that McEvoy was "totally disabled and unable to perform any gainful work," due to cirrohosis and lethargy resulting from chronic alcohol abuse.

In May 2003, however, Dr. Jamil indicated that McEvoy was clinically stable with regard to the health issues he diagnosed in March 2003.

In August 2003, McEvoy was examined by consultative examiner Ralph Inabnit, M.D. Dr. Inabnit observed diminished breath sounds but no rales or rhonchi and no wheezing. The doctor noted that McEvoy had normal muscle tone, normal range of motion and a normal neurological exam. Dr. Inabnit summarized McEvoy's health issues as the following: evidence of ethyl alcohol abuse, poor recall, memory impairments, probably cirrhosis of the liver, poor gait, chronic fatigue, portal hypertension, and a history of hepatic encephalopathy. In April 2004 and January 2005, McEvoy again underwent consultative examinations performed by Dr. Inabnit, whose conclusions were largely unchanged since McEvoy's initial visit, in August of 2003. In September 2003, McEvoy underwent a mental status evaluation, performed by John Heroldt, Ed.D., a clinical psychologist, and his assistant Mary Anne Miller, M.S. Upon completion of mental status evaluation her Dr. Heroldt and Ms. Miller concluded that McEvoy's alcohol dependence was in early remission and assigned her a GAF [1] score of 55, indicating moderate symptoms.

In October 2003, McEvoy's medical records were reviewed by state agency reviewing physician, F. Montoya, M.D., who concluded that McEvoy could perform light work with a limitation regarding work associated with heights. Dr. Montoya's conclusions were reviewed

---

[1]Global Assessment of Functioning ("GAF") measurement of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000) (hereinafter "DSM-IV").

and affirmed by a second physician, A. Dobson, M.D.  Also in October 2003, a non-examining State agency physician, K. Neville, Ph.D.  completed a Psychiatric Review Technique form ("PRTF") and determined that McEvoy  had only mild degrees of functional limitation in various areas of mental functioning.   Dr. Neville's conclusions were reviewed and affirmed by a second psychologist, D. Unversaw, Ph.D.

In July 2004,  McEvoy underwent psychological testing performed by a DDS doctor, Craig Nordstrom, Psy.D., a clinical psychologist. Dr. Nordstrom conducted a mental status exam and administered memory testing and concluded that McEvoy performed weakly in tasks drawing on working memory (concentration, attention) and noted that her scores fell between low-average and high-average for someone her age.  Dr. Nordstrom assigned McEvoy a GAF score of 60, indicating only mild to moderate impairment in occupational functioning, due to some limitation in attention and concentration.

Additionally, in July 2004, state agency reviewing psychologist R. Klion. Ph.D. executed a Psychiatric Review Technique form ("PRTF") that indicated McEvoy had no severe mental impairment and only mild or no limitations in the various domains of mental function.

In January of 2006, Dr. Motley diagnosed McEvoy with osteoporosis and treated with Fosamax.  In February of 2007, Dr. Motley diagnosed McEvoy with moderate COPD and abnormal thyroid function, and, in May of 2007, provided a MSS which indicated that  McEvoy was restricting to lifting 10 pounds on occasion, and could never lift any amount of weight frequently.   Dr. Motley limited McEvoy from standing or walking more than 2 hours a day, and indicated that her ability to push and pull were limited as well.   Dr. Motley also noted that McEvoy could not climb or crawl and had occasional postural limitations.  Additionally, Dr.

Motley indicated that McEvoy had restrictions to exposure to environmental conditions such as temperature, noise, dust, vibration, fumes, etc. Dr. Motley noted McEvoy's diagnoses of COPD, cirrhosis of liver, opsteoporosis, and neuropathy as medical/clinical findings to support the restrictions he opined regarding on McEvoy's ability to work

On May 21, 2005, McEvoy testified that she is unable to work to due to fatigue caused by cirrhosis. In addition, McEvoy testified she had shortness of breath, leg, back, and arm pain, as well as several other health problems due to a variety of causes. McEvoy testified that she has trouble sleeping at night and has difficulty with her memory and ability to concentrate at times. McEvoy testified that she lives on her own and tends to her cooking, cleaning and financial needs.

B.      Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed de novo.  Haynes, 416 F.3d at 626.

C.      McEvoy's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321(a), McEvoy must establish that

she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability"

as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Social Security regulations prescribe a sequential five-part test for determining

whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently

employed; (2) the claimant has a severe impairment or combination of impairments; (3) the

claimant's impairment meets or equals any impairment listed in the regulations as being so

severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to

perform his past relevant work; and (5) the claimant is unable to perform any other work existing

in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920;

Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any

step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five,

then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment

meets any of the severe impairments listed in the regulations, the impairment is acknowledged

by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404.

However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which

in turn is used to determine whether the claimant can perform her past work under step four and

whether the claimant can perform other work in society under step five. 20 C.F.R. §

6

404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden

shifts to the Commissioner at step five.  Id.

McEvoy asserts three arguments regarding the ALJ's assessment of her case.  First,

McEvoy argues that the ALJ's RFC finding was incomplete and failed to trace a path from the

evidence to his conclusions. Second, McEvoy contends that the ALJ made and erroneous

credibility determination. Finally, McEvoy alleges that the ALJ improperly found her capable of

performing her past relevant work.

> 1. The ALJ's RFC finding is sufficiently articulated and supported by substantial evidence.

McEvoy contends the ALJ erred by failing to state with any specificity what evidence he

relied on when formulating her RFC.  Additionally, McEvoy contends the ALJ failed to properly

weigh and consider the evidence on record.   In furtherance of these arguments, McEvoy

indicates that the ALJ, dismissed all of  the State agency, treating and consultative findings in his

opinion and arbitrarily concluded that she is capable of light work. As a result, McEvoy alleges

that the ALJ has "played doctor."  In addition, McEvoy argues the ALJ's decision is erroneous

and incomplete, as it fails to build an accurate and  logical bridge between the evidence and his

findings.   The ALJ  "must minimally articulate [her] reasons for crediting or rejecting evidence

of disability"  and "build an accurate and logical bridge between the evidence and the result."

Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992),  Sarchet v. Chater , 78 F.3d 305, 307

(7th Cir. 1996), 78 F.3d 305, 307 (7th Cir. 1996); McKinnie v. Barnhart, 368 F.3d 907, 910 (7th

Cir. 2004) ("[t]he ALJ need not address every single piece of evidence in his decision, . . . but

his analysis must build an accurate and logical bridge between the evidence and his findings");;

Shramek v. Apfel , 226 F.3d 809, 811 (7th Cir. 2000).

Further, an ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Id. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence that the ALJ must consider. Hofslien, 439 F.3d at 377. Nevertheless, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

Regardless of how much weight the ALJ assigns to any physicians, an ALJ must, at least, address the claimant's treating physicians' opinions and explain the weight given to them before affording greater weight to that of a non-treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995). While the ALJ is not required to award a treating physician controlling weight, the ALJ must, at a minimum, sufficiently articulate his reasoning for not doing so. Id.

In the immediate case, the ALJ offered a sufficient explanation of the weight given to the opinions of McEvoy's treating physicians, Dr. Jamil and Dr. Motley. McEvoy contends the ALJ

8

failed to articulate specific reasons for discounting the medical opinions of these physicians and, as such, afforded said opinions with an insufficient amount of weight. However, a review of the record reveals that this contention is easily rebutted as the ALJ gave a sufficiently supported articulated explanation as to why he was discounted these medical opinions. For example, the ALJ explained that he assigned minimal weight to Dr. Jamil's opinion because it was not well supported objectively, internally inconsistent and was contradicted by other substantial evidence in the record. (Tr. 30). Specifically, The ALJ found that, although, Dr. Jamil's opined that McEvoy was disabled, Dr. Jamil referenced no vocational relevant limitations to accompany his disability finding. (Tr. 30). Further, the ALJ noted that record demonstrates that McEvoy's overall health improved, based upon Dr. Jamil's progress notes which indicated that McEvoy was clinically stable. (Tr. 30). Similarly, the ALJ afforded Dr. Motely's opinion minimal weight for lack of evidentiary support. Specifically, the ALJ noted that Dr. Motley opined that McEvoy was confined to sedentary work but failed to indicate any specific clinical findings or abnormalities to support his opinion. (Tr. 30).

In conclusion, the ALJ found the medical opinions of Dr. Jamil and Dr. Motley to be insufficiently supported and in contradiction with other record evidence. The ALJ supported his conclusions by specifically citing to evidence in the record. Therefore, the ALJ has met the required threshold for discounting these opinions and affording them minimal weight. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion.").

McEvoy additionally accuses the ALJ of "playing doctor," by making a conclusory RFC finding and failing to state with any specificity the record evidence he relied upon when

determining McEvoy's RFC. Further, McEvoy contends the ALJ dismissed all the State agency, treating and consultative findings of record and arbitrarily concluded that she is capable of light work. Again, a review of the record will reveal these contentions are easily rebutted, as the ALJ specifically articulated the record evidence he used when determining McEvoy's RFC. Indeed, this Court concludes that the ALJ gave a thorough and comprehensive review of McEvoy's medical history. Following that review, the ALJ indicated that he based his RFC determination on the entirety of the evidence, including the conclusion of other DDS clinicians and consultants and cited to exhibits 8F, 9F, 13F in the record. (Tr. 30). In doing so, the ALJ demonstrated his obligation to assess the entire record, and indicated that the RFC assessment was based on the entirety of this evidence. Further, the ALJ's reference to these exhibits noted what specific evidence the ALJ relied upon when determing McEvoy's RFC. Upon examination of Exhibit 8F, it is revealed that the ALJ specifically relied on the results of MvEvoy's Psychiatric Review Technique form ("PRTF"), administered by Dr. Montoya and reviewed by Dr. Dobson. This PRTF showed McEvoy had no limitations except to work involving hazards such as heights or machinery. (Tr. 257-263). Additionally, the ALJ relied upon Exhibit 9F, another PRTF completed by Dr. Neville. This PRTF indicated McEvoy did not have severe impairments and had only mild functional limitations. (Tr. 266-280). Finally, the ALJ also indicated that he specifically relied upon Exhibit 13F, a PRTF completed by Dr. Klion. This test again revealed only mild degrees of limitation with respect to McEvoy's functional capacities. (Tr. 301-314).

The ALJ's reference to specific exhibits in combination with the ALJ's comprehensive review and analysis of McEvoy's medical history demonstrates the ALJ has sufficiently articulated the evidence he relied upon when crafting McEvoy's RFC finding. Accordingly, this

10

Court concludes that the ALJ's RFC finding is substantially supported and sufficiently articulated.

2.     The ALJ's credibility finding is supported by substantial evidence.

In addition, McEvoy alleges that the ALJ's determination of her credibility was erroneous. Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003): Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). See also Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 966-7p. When an ALJ's determinations are based on objective factors rather than subjective consideration, such as the claimants demeanor, there is greater freedom to review the ALJ's decision. Clifford v. Apfel, 277 F.3d 863, 872 (7th Cir. 2000). However, an ALJ is not required to provide a "complete written evaluations of every piece of

11

testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)(quoting Diaz v. Charter, 55 F.3d 300, 308 (7th Cir. 1995).

This Court begins its analysis, giving substantial deference to the ALJ's credibility determination.  See Jens, 347 F.3d 209 at 213 (holding that credibility determinations are only to be overturned if patently wrong).  As such, this Court limits it review to determining whether the ALJ's opinion is supported by substantial evidence in the record and whether the ALJ adequately articulated the reasons for his conclusions.  Haynes, 416 F.3d at 626; Zurawski, 245 F.3d at 887.

McEvoy contends the ALJ made an improper credibility finding by relying on his own lay opinion of what the evidence shows and that he inappropriately relied on objective factors alone.  First, this Court  has already found the ALJ's assessment of McEvoy's RFC is consistent with and supported by substantial record evidence.  As such, this Court has already found that the ALJ sufficiently articulated the specific evidence, including the objective and subjective factors he used to determine McEvoy's RFC.  Accordingly,  this Court has found the ALJ's opinion is proper as it is supported by this specifically articulated record evidence.  Therefore, McEvoy's argument that the ALJ improperly relied  upon his on his own opinion  in determining her credibility is unpersuasive.

 This Court also finds McEvoy's contention that the ALJ relied too heavily on objective factors is also unpersuasive.  Instead, after reviewing the ALJ's opinion, this Court finds the ALJ's credibility determination to be supported by substantial evidence.  The ALJ took into consideration McEvoy's numerous  physical complaints regarding pain associated with her limbs, particularly her right ankle, but noted that the evidence of record did  not support McEvoy's reported degree of symtomatology and level of dysfunction.  (Tr. 29).  Additionally,

12

the ALJ cited that McEvoy's neurologic functions regarding motor skills, reflex activity and sensation were largely intact and that clinicians observed McEvoy's ability to walk without assistive device and opined that McEvoy retained a functional range of motion. (Tr. 29). Further, the ALJ stated that the record revealed no objective evidence to substantiate McEvoy's claim of lower extremity swelling and the need to elevate her legs for 1-1.5 hours daily. (Tr. 29).

McEvoy also alleged her inability to work based on pulmonary problems and deficiencies in concentration and memory. Again the ALJ demonstrated the record does not support a conclusion that McEvoy's symptoms and inability to function rise to the levels that McEvoy claims. The ALJ acknowledged McEvoy's history of COPD but cited to clinical findings that indicated her lungs were free of wheezes, rales, rhoni, or other adventitious sounds. (Tr. 29). Additionally, the ALJ noted that McEvoy had not needed hospitalization or recurrent emergent care for her pulmonary issues. (Tr. 29). As for McEvoy's claims pursuant to her concentration and memory deficiencies, the ALJ indicated that evaluators consistently described her as alert, well orientated, and without obvious cognitive deficit. (Tr. 29).

The ALJ also took into consideration McEvoy's own testimony that she was able to live independently and complete self-care tasks and other activities. (Tr. 29). Specifically, the ALJ relied on further testimony of McEvoy stating she was able to cook, clean, do laundry, attend church and manage her personal finances without the assistance of others.

This evidence indicates that the ALJ relied upon substantial record evidence to support his credibility finding, including both objective factors, such and medical findings, and subjective factors, such as McEvoy's contentions about her lifestyle. Such discussion of the evidence creates the requisite evidentiary support and logical basis that is necessary for this

13

Court to uphold the ALJ determination.  See Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003).

However, this Court notes the ALJ's abundant  explanation  is not entirely free from error. Specifically, this Court notes that the ALJ misstated the record when he stated that "no physician imposed a work preclusive limitation on the claimant's functioning." (Tr. 28).  Instead, the record reflects that Dr. Motley completed a Medical Source Statement in May of 2007, checking boxes that indicated McEvoy had certain preclusive postural and environmental limitations.  (Tr. 406-409).  Although the ALJ misstated the record by ignoring this finding, this Court finds that this error is  harmless and not material, in light of the detailed explanation and abundant evidentiary support used to support he ALJ's credibility finding.

Accordingly, this Court finds the ALJ's credibility finding to be substantially supported and sufficiently articulated.

3.      The ALJ's step four determination was proper.

In addition, McEvoy argues that the ALJ erred in finding that she could perform her past relevant work as a counter/sales clerk by relying on incomplete hypotheticals.  Specifically, McEvoy argues the ALJ failed to incorporate all of her mental and environmental limitations in the hypothetcials given to the VE.  Further, McEvoy argues that the position counter- attendant was not the same as her past work as a counter clerk, despite a similarity in the duties performed. As such, McEvoy contends the job classification counter- attendant is flawed.  Finally, McEvoy argues the number of jobs assigned to that job classification is not a significant number.

This Court finds this argument based on incomplete hypotheticals to be nothing more than a challenge to RFC determination, which this Court has already found to be appropriate.

Therefore, because the hypotheticals were based on the ALJ's sound RFC determination, the hypotheticals were appropriate. Further, McEvoy's contention that there was an improper finding regarding the job classification of counter-attendant is unpersuasive and untimely. McEvoy was represented by counsel a the hearing and had the opportunity to object to the VE's job classification and cross-examine the VE regarding the classification. The record is absent of any proof that such an objection was made, and McEvoy has failed to introduce any evidence to the contrary. Finally, this Court does not find the argument regarding whether the classification was supported by a significant number jobs to be persuasive without legal authority to the contrary.

Accordingly, this Court concludes that the ALJ's step four finding, regarding McEvoy's ability to perform her past work is proper.

## III.    CONCLUSION

The ALJ's determination of McEvoy's RFC is sufficiently articulated and supported by substantial evidence. Consequently, the ALJ's step four determination is proper. Additionally, the ALJ's analysis of the claimant's credibility is also supported by substantial evidence. Therefore, McEvoy's motion for remand is **DENIED**. [Doc. No. 16]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is instructed to term the case and enter judgment in favor of the Commissioner.


**SO ORDERED**

Dated this 30th Day of October, 2009.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge